UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROBERT KELLY, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 1:09-CV-59 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| SKY ANGEL, U.S., LLC, and | ) |
| RANDSTAD US, L.P., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

Before the Court are motions for summary judgment filed by Defendant Sky Angel, U.S., LLC, ("Sky Angel") (Court File No. 36) and Defendant Randstad U.S., L.P. ("Randstad") (Court File No. 38). Plaintiff Robert Kelly, III ("Plaintiff") filed responses (Court File Nos. 40, 41) and the defendants replied (Court File No. 44, 46). The Court, having considered the parties' respective filings (Court File Nos. 36, 37, 38, 39, 40, 41, 44, 46 ) concludes summary judgment is appropriate and will accordingly **GRANT** Defendants' motions (Court File Nos. 36, 38).

## I.   RELEVANT FACTS

This action arises out of Plaintiff's employment through Randstad staffing agency as a temporary employee for Sky Angel. Plaintiff was placed at Sky Angel's call center in Cleveland, Tennessee from January 21, 2008, until May 6, 2008 (Court File No. 38-2, p. 34). He was originally placed in a telephone sales position but was transferred to the tech team in March 2008 (Court File No. 41-2, pp. 11-13; Court File No. 40-3, p. 5). Sky Angel provides direct-to-home television service of multiple faith and family channels. The service is provided using a special set-top box,

which sits on top of the television and is necessary to receive the transmission signal for the channels. Sky Angel does not manufacture these boxes and the boxes are owned and shipped to Sky Angel customers (along with various documents from Sky Angel) by a company called NeuLion (Court File No. 41-2, pp. 7-10).

When Plaintiff transferred to the tech team he received technical training from a NeuLion representative on the set-top box and learned the box used Linux as part of its computer operating system (Court File No. 41-4, p. 5). Linux is under a General Public License ("GPL") authored and copyrighted by the Free Software Foundation (Court File No. 41-7, p. 2). Acceptance of the terms and conditions of the license is indicated by modifying or distributing the source code or works based on the code (Court File No. 41-7 ("GPL") p. 8). Plaintiff was familiar with Linux and the GPL and had concerns about NeuLion and Sky Angel's compliance with certain conditions (Court File No. 40-4, pp. 74-76). He voiced concerns and made inquiries about GPL compliance to a NeuLion representative, Tim Scotton ("Scotton"), Plaintiff's senior supervisor at Sky Angel, Ian Vance ("Vance"), a member of Sky Angel's management team, and Darlene Porter ("Porter"), an agent with Randstad. At Plaintiff's 90-day evaluation with Scotton and Porter, Porter suggested he put his concerns about these issues in writing and copy her on his emails to Sky Angel (Court File No. 36-2, pp. 15-16), but Plaintiff never did (Court File No. 38-1, pp. 26-27). Following the evaluation, Plaintiff felt he had "exhausted all avenues for getting the problem corrected internally" and decided to voice his concerns by posting on the internet to the Linux kernel email list, notifying all Linux copyright holders and developers (Court File Nos. 40, p. 5; 40-4, p. 77).

On the morning of May 6, 2008, Clark Thompson ("Thompson"), supervisor of the Sky Angel call center, received an email alert Sky Angel was mentioned on the internet (Court File No.

40-3, p. 14). He discovered the following posting titled "Possible GPL violation in Linux-based IPTV set top box" submitted by Plaintiff:

> The company I work for, Sky Angel, has recently swapped from satellite broadcast to IPTV. The set top box we are using runs Linux according to NeuLion, our partner company who supplies the STB. When we distribute the set top boxes, however, there is no disclaimer of warranty, copy of the GPL, offer for source code, or any mention of Linux as far as I can find. Isn't this a violation of the GPL and your copyright? I have raised concerns about the situation, but everyone here seems convinced it is somehow ok.
>
> What should be done about this? I am not sure who would be responsible as it seems NeuLion or some associate makes the STB and takes care of the software, but we sell it to our customers. Is there any possible way I might have missed that this could actually be permissible?

(Court File No. 40-3, p. 20).

Thompson emailed Michelle Ughi, Sky Angel's Vice President of Human Resources, Violetta Avedisian, Executive Vice President of Special Projects, Ken Douglas, Vice President of Operations, and Porter (Court File No. 40-3, p. 19). In the email, Thompson included a link to the internet posting and indicated he "had to pull a Randstad talent" for violating the non-disclosure agreement and blogging policies (*id.*). Plaintiff was instructed to report to the Randstad office and not return to work at Sky Angel that afternoon (Court File No. 40-4, pp. 27-28). Plaintiff met with Porter and Ryan Scherer at Randstad's offices where he was informed his assignment at Sky Angel had ended. Porter indicated that due to his prior history with Randstad and his work at Sky Angel, she did not feel they would be able to place him elsewhere (Court File Nos. 40-1, pp. 26-28; 38-1, p. 28).

Plaintiff filed the instant action claiming unlawful discharge in violation of the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304, and common-law retaliatory

3

discharge in violation of public policy. Plaintiff asserts he was fired because he refused to remain silent about unlawful activities. Randstad and Sky Angel have both moved for summary judgment on multiple grounds.

**II.   STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

Plaintiff filed this action claiming he was wrongfully terminated in retaliation for his reporting copyright violations by the company. Both defendants have moved for summary judgment in part due to Plaintiff's failure to demonstrate he "refused to remain silent about" or "reported" any illegal or unlawful activity as contemplated by Tennessee law. Randstad also moves for summary judgment based on their legitimate reason for terminating Plaintiff's employment, his poor history of assignments with the staffing agency. Sky Angel argues Plaintiff was never their employee pursuant to their contractual relationship with Randstad and Sky Angel also did not terminate Plaintiff's employment. If, however, the Court finds Plaintiff is able to satisfy the elements of a prima facie case under either claim, Sky Angel asks the Court to find their use of set top boxes was not illegal as a matter of law.

Pursuant to Tennessee's longstanding employment-at-will doctrine, "an employment contract for an indefinite term is terminable at the will of either the employer or the employee for any cause or for no cause." *Guy v. Mut. Ins. Policy*, 79 S.W.3d 528, 534-35 (Tenn. 2002). Although restrictions are placed on employers' ability to terminate employees in contravention of public policy, it is an "important, but narrow exception to the employment-at-will doctrine." *Franklin v. Swift Transp.*, 210 S.W.3d 521, 530 (Tenn. Ct. App. 2006). Such a cause of action is applicable in "limited circumstances where certain well-defined, unambiguous principles of public policy confer upon employees which must not be circumscribed or chilled by the potential of termination." *Id.* at 531. If such circumstances are present, the TPPA and the common law provide separate causes of action when an employee is discharged for reporting illegal or unethical conduct.

Although both the TPPA and the common law prohibit retaliatory discharge, the elements for each cause of action are slightly different. Under the TPPA, "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn Code. Ann. § 50-1-304(b). To establish a cause of action under TPPA, Plaintiff must show (1) his status as an employee of the defendants; (2) his refusal to participate in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination. *Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp.2d 848, 862 (E.D. Tenn. 2006). As defined in the statute, "illegal activities" are those "in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn Code. Ann. § 50-1-304(a)(3).

A plaintiff also can claim damages under common-law retaliatory discharge when "a motivating factor for the discharge violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision." *Guy*, 79 S.W.3d at 535 (citing *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988)). Plaintiff must show (1) an employment-at-will relationship existed; (2) he was discharged; (3) the reason for his discharge was attempting to exercise a statutory or constitutional right, or for any other reason which violates clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; (4) a substantial factor in the employer's decision to discharge him was Plaintiff's exercise of protected rights or his compliance with clear public policy. *Franklin*, 210 S.W.2d at 528. Unlike the TPPA, Plaintiff only needs to show his exercise of protected rights was a "substantial factor" in the employer's decision to discharge him. *Id.*

Under both the TPPA and common law, it is not enough for an employee to show an employer violated a law or regulation, instead, the Court's "inquiry focuses on whether some important public policy interest embodied in the law has been furthered by the employee's actions." *Franklin*, 210 S.W.2d at 532 (internal citations omitted). Tennessee courts have recognized restrictions beyond those statutorily prescribed on an employer's right to terminate an employee, but "the exception cannot be permitted to consume or eliminate the general rule." *Chism*, 762 S.W.2d at 556. Ultimately, "[p]ublic policy guidance is necessary because at the heart of the law of retaliatory discharge is the balance between the employer's undeniable right to terminate an at-will employee over management and policy decisions and the employee's right to protection from unlawful discharge." *Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1066, 1068 (E.D. Tenn. 1995).

In cases where public safety is at issue or important public interests are furthered, a cause of action for this exception to the at-will doctrine is appropriate. *See, e.g.*, *Guy*, 79 S.W.3d at 537-38 (protecting consumers from insurance fraud); *Crews v. Buckman Labs*, *Int'l, Inc.*, 78 S.W.3d 852, 864-65 (Tenn. 2002) (preventing the unauthorized practice of law); *Mason v. Seaton*, 942 S.W.2d 470 (Tenn. 1997) (reporting hotel's fire code violations and dangerous working conditions); *Moray v. Novartis Pharm.*, No. 3:07-CV-1223, 2009 WL 82471 at *10 (M.D. Tenn. Jan. 9, 2009) (finding protecting consumers from mishandled or adulterated drug products is clearly established public policy as a matter of law); *Vancleave v. Reelfoot Bank*, No. W2008-01559-COA-R3-CV, 2009 WL 3518211 (Tenn. Ct. App. Oct. 30, 2009)(reporting violations of the Bank Secrecy Act). In *Chism*, the court references examples of clearly defined public policy including cases where employees were terminated for refusing to commit perjury, for complying with a subpoena for jury duty, or for

refusing to mislabel unsafe or defective products. 762 S.W.2d at 556.

Protection offered to "whistleblowers" is derived from the "principle that an employee should not be placed in the dilemma of being forced to choose between reporting or participating in illegal activities and keeping a job." *Moray*, 2009 WL 82471 at * 7 (citing *Franklin*, 210 S.W.3d at 530). This protection, however, is intended to remain a narrow exception to the at-will doctrine. *Chism*, 762 S.W.2d at 556. In cases where an important public policy interest is not furthered, or it is unclear upon which regulation a plaintiff's claim is based, relief is not available under the TPPA or common law. *See, e.g., Franklin*, 210 S.W.3d at 533 (employee's refusal to drive a truck with out the regulation original cab card did not implicate "fundamental public policy concerns"); *Clark v. Hoops, LP* --- Supp.2d ----, No. 07-2367-CV-JPM-TMP, 2010 WL 1417744 (W.D. Tenn. Apr. 1, 2010) (reporting building and safety code violations to county building inspector failed to establish a claim because the specific statute or regulation were not identified); *Griggs*, 909 F. Supp. at 1070 (finding plaintiff failed to establish a clear declaration of public policy and "the Court cannot see the risk of clear, immediate harm to the public by the types of violations of credit union laws and regulations" alleged); *Sacks v. Jones Printing Co., Inc.,* No. 1:05-CV-131, 2006 WL 686874 at *4-6 (E.D. Tenn. March 16, 2006) (reporting improper disposal of chemicals in violations of Tennessee's Safe Drinking Water Act could satisfy the public policy element of plaintiff's claim but the reporting of improper ventilation in violation of OSHA regulations could not because the OSHA regulations are designed to protect employees and not the public at large); *Burnett v. America's Collectibles Network*, No. E2009-00591-COA-R3-CV, 2010 WL 669246 at *7 (Tenn. Ct. App. Feb. 25, 2010) (reporting supervisor's misappropriation of company materials and employee time was an "internal management issue, with dangers from misuse confined to company profits and

efficiency.") "Finding that any regulatory infraction by an employer, no matter how minor, can support a claim of retaliatory discharge would be a clear extension for the law, well beyond the boundaries of any prior Tennessee decision." *Franklin*, 210 S.W.3d at 532.

Viewing the facts in the light most favorable to the plaintiff, the Court finds as a matter of law Plaintiff's internet posting does not bring him under the protection of either the common law or statutory causes of action for retaliatory discharge. Plaintiff cites examples of the recognized importance of protecting intellectual property rights, including Article I, Section 8, clause 8 of the U.S. Constitution and a reference to the "public welfare" found in Tenn. Code Ann. § 49-7-142 (requiring public and private institutions to implement a policy preventing copyright infringement over their computer systems) (Court File No. 40, p. 13; Court File No. 41, pp. 11-12). Plaintiff's conduct of posting an inquiry concerning potential violations of a license agreement do not rise to the level of reporting violations of the Copyright Act. Rather, his internet disclosures are more analogous to exposing a possible breach of contract. Ultimately, this breach of a licensing agreement *could* result in the determination a copyright violation occurred, but such determination is beyond the facts of the case. An employee's refusal to remain silent about a potential breach of contract does not further the important public policy interest contemplated by the exception to the at-will doctrine. *See, e.g., Fleming v. Xerox Connect, Inc.*, 50 F. App'x 211, 214 (6th Cir. 2002).

Even if Plaintiff's report of potential noncompliance with the license agreement eventually did result in discovering copyright violations, such a finding would benefit the private interests of the copyright holders themselves. Protection under the Copyright Act is afforded to "create incentives for creative effort" and to avoid impairment of "the copyright holder's ability to obtain the rewards that Congress intended him to have." *Sony Corp. of Am. v. Universal City Studios, Inc.*,

9

464 U.S. 417, 450 (1984). As a result of this creative effort, the public indirectly benefits by the continued development of new works, but these indirect benefits are distinguishable from the public's fundamental need to be protected from life-threatening building conditions, insurance fraud, or adulterated food and drug products. The Court leaves open the question of whether actually reporting a copyright violation under other circumstances could establish the necessary fundamental public policy interest necessary for a retaliatory discharge claim.

Plaintiff reported his concerns about possible violations of a license agreement to copyright holders in an internet posting and this action furthers the private interest of the copyright holders themselves. Plaintiff's actions do not implicate the necessary public policy to bring his termination within this narrow exception to the employment-at-will doctrine. Because Plaintiff cannot establish an essential element of his TPPA and common law claims, the Court need not determine the factual issues of the employer-employee relationship or whether there was any illegality in Sky Angel's use of set-top boxes.

IV.    **MOTION TO STRIKE**

Plaintiff subsequently filed a motion to strike and memorandum (Court File Nos. 42, 43), to which Sky Angel responded (Court File No. 47) and Plaintiff replied (Court File No. 48). Plaintiff's motion to strike concerns two paragraphs from the affidavit of Thomas Scott, which was submitted in support of Sky Angel's motion for summary judgment (Court File No. 36-5, ¶¶ 2-3). Plaintiff asks the Court to strike these paragraphs as they contain inadmissible hearsay. The Court finds the out of court statements in paragraph two are being offered to demonstrate their effect on Mr. Scott and his decision to end Plaintiff's assignment as described in paragraph three. A statement is hearsay if it is "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Sky Angel is not attempting to prove the truth of the statements in either paragraph and thus the statements in these paragraphs do not constitute hearsay. Therefore, the Court will **DENY** Plaintiff's motion to strike (Court File No. 42).[1]

V. **CONCLUSION**

For the reasons stated, the Court will **DENY** Plaintiff's motion to strike (Court File No. 42) and will **GRANT** Defendants' motions for summary judgment (Court File Nos. 36, 38).

An Order shall enter.

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] In light of the Court's determination Plaintiff failed to establish necessary elements of his claims based on the public policy interest, these paragraphs were not an essential factor in the Court's ruling.